## TALLEY v. BURGESS *et al.*

No. 4328.   Opinion Filed May 18, 1915.

(149 Pac. 120.)

1.   **INDIANS—Guardian's Sale of Allotted Inherited Lands—Validity.**
A contract of sale, made by a guardian of a Cherokee Indian
minor, prior to statehood, but after the approval of the act of
Congress of April 26, 1906 (34 Stat. 137, c. 1876), and prior to
that of .May 27, 1908 (35 Stat. 312, c. 199), of inherited lands
allotted to his father, there being adult heirs, and without an order
of court "made upon petition filed by [the] guardian," is void.

2.   **INDIANS—Guardian's Sale of Allotted Inherited Lands—Validity.**
Section 22 of an act of Congress approved April 26, 1906 (34 Stat.
145, c. 1876), provides its own special procedure, when it is desired
that a minor join with the adult heirs in the sale of an inherited
allotment; and prior to statehood, such purpose could only be ac-
complished through the action of "a guardian, duly appointed
by the proper United States court for the Indian Territory,
*   *   * upon order of such court made upon petition filed by
guardian."

(Syllabus by Brewer, C.)

*Error from District Court, Tulsa County;*

*L. M. Poe, Judge.*

Action by H. B. Talley against Daniel S. Burgess and others.
Judgment for defendants, and plaintiff brings error.   Affirmed.

*Haskell B. Talley, pro se.*

*Luther James,* for defendants in error.

BREWER, C.   H. B. Talley, as plaintiff below, brought this
suit for the specific performance of a contract, against Daniel S.
Burgess, a Cherokee Indian minor.   The contract sought to be

enforced was executed by Nora B. Burgess, mother and legal guardian of defendant.  By its terms, the law firm of Talley & Harnage was employed to represent the interest of the minor in various legal matters, and especially to procure the cancellation of the allotment of certain lands near Tulsa, allotted to defendant's mother, an intermarried Cherokee, and to procure the allotment of the same in the name of defendant's father, at the time deceased. This seems to have been accomplished.

The contract provided that for the services rendered and to be rendered, the attorneys should have "a one-half interest in the lands formerly embraced in the allotment of Nora B. Burgess, and now embraced in the allotment of John S. Burgess, deceased." The contract was executed May 11, 1906.  The lands involved were allotted, after his death, to John S. Burgess, father of defendant.  There were also adult heirs of the allottee.  The contract was not authorized or approved by any court.  Mr. Harnage refused to join in the suit against the minor and was, for that reason, made a defendant.  After suit was brought, he filed a disclaimer of any right or interest under the contract.  The prayer of the petition was that plaintiff "be decreed a one-half interest in the above-described property," etc.

Defendant filed a plea, denominated a motion, objecting to the introduction of any evidence, and asking judgment on the pleadings, setting out six special reasons therefor.  One of the grounds follows:

"Because it does not appear from the pleadings and exhibits in the case that the contract sued upon was executed in conformity with the provisions of the law governing the sales of minors' lands in force in Indian Terrieory at the time said contract was made; and to enforce this contract against said Daniel S. Burgess would deny him the protection of section 22 of an act of Congress, approved by the President on April 26, 1906, entitled, 'An act to provide for the final disposition of the affairs of the Five Civilized Tribes in Indian Territory, and for other purposes,' in this,

that it would make effective a contract of sale by a guardian of the minor's real estate without an order of a proper court, duly made upon a petition filed by the guardian, first directing such sale."

This plea, though denominated a motion, was in all its essentials a demurrer, and will be treated as such. The court sustained the demurrer and entered judgment for defendant, evidently on the ground that the contract was illegal and unenforceable. The court was correct in its holding.

The contract was a sale, or agreement to sell, on May 11, 1906, one-half of a minor heir's interest in an allotment made in his father's name, but after his death. There were adult brothers and sisters living. Inasmuch as this attempted alienation of a minor's inherited lands was made after the passage of the act of April 26, 1906, and prior to that of May 27, 1908, the validity of the contracts is to be determined by the provisions of the former act, and especially section 22 thereof, which reads:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory. And in case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

To sustain his contract, plaintiff construes this section as meaning that a guardian, prior to statehood, had the power to

join with the adult heirs in a sale of his ward's interest in an inherited allotment, without petitioning the court to be allowed to do so, and without any court action in the matter; and to arrive at this construction, an elaborate analysis is attempted of the various sentences and clauses of the section. Plaintiff cites and seems to rely upon the case of *Wilson v. Morton,* 29 Okla. 745, 119 Pac. 213, which case, so far as called to our attention, or as we have found, is the only case directly in point. We disagree with counsel as to the effect of that case on his proposition. It is true, in the Wilson Case, *supra,* the conveyance was made since statehood, yet every word of that case, when it is fairly considered, leads to the conclusion that a guardian, prior to or after statehood, could only join with the adult heirs in a sale of his ward's inherited lands, upon "an order of court made upon petition filed by (the) guardian." In that case, it is said:

"There can be no doubt as to what Indian minors may, under its provisions, sell their inherited lands, or when they can sell. As to how the sale shall be made, the act provides that it shall be by the guardian, duly appointed, upon order of the court, and that the order of court shall be made upon petition filed by the guardian. The procedure prescribed by the act itself seems to us complete."

We shall not go over the ground so well covered in the Wilson Case, *supra,* in which pains are taken to show that section 22 contains its own procedure. The general laws in force in the Indian Territory relating to the sale of minors' lands does not apply, because the section contains its own special procedure, and to apply the general law would defeat the intention of Congress and almost inevitably work to the disadvantage of the minor, whose interests were intended to be safeguarded. If the court had for a moment believed that a guardian in Indian Territory could act, independent of the United States court, it certainly would not have wasted so much time and so many words in a discussion of why the general law did not, and the special procedure found in the act did, apply.

We therefore hold that under section 22, *supra*, a guardian desiring to sell his ward's interest, by joining the adult heirs in the sale of an inherited Indian allotment, prior to statehood, could only do so under an order of the proper United States court, upon a petition to be allowed so to do; and that a sale of such an interest by the guardian, independent of court action, was and is void.

It follows that the contract in suit, being illegal, the court had no power to require its specific performance, or to charge the land of this minor in any way because of it. The cause should be affirmed.

By the Court: It is so ordered.